MAIDEN COMPANY, Plaintiff,

v.

Glenn BROYLES, Alan Broyles and the Ætna Casualty & Surety Company, Defendants.

No. 873.

United States District Court
E. D. Kentucky, London.

Jan. 30, 1959.

State of Ohio, was prime contractor under a contract with the United States of America, U. S. Army Corps of Engineers, Nashville District, covering the construction of the Wallsend section of the Pineville, Kentucky, floodwall project.

Defendants, Glenn Broyles and Alan Broyles, citizens of Kentucky, while operating a construction business as partners under the firm name of Broyles Brothers, on January 18, 1956, entered into a subcontract with plaintiff by which they were sublet certain portions of the work covered by the prime contract.

Defendant, Aetna Casualty & Surety Company, a corporation organized under the laws of the State of Connecticut, as surety, executed bond for the faithful performance of the subcontract.

This suit is the result of a controversy over whether a certain catch basin and gatewell, as set out in the drawings and specifications covering the project in question, were structures which the defendants were obligated to construct under the following work description contained in the subcontract:

"Outlet structures, complete
Culvert & Headwalls."

The specifications and drawings prepared by the Corps of Engineers, U. S. Army, covering the floodwall project are incorporated by reference in the subcontract with the provision that the work shall be done in conformity therewith. Under section 7–02 of the project specifications entitled "Outlet Structures" it is provided that the work under such section shall "consist of the catch basin, 4- by 3- foot conduit, gatewell and outlet structure, including all excavation and backfill, concrete, miscellaneous metal parts and embedded items, attached equipment, riprap paving, and incidentals required," and project drawing QIB 77/30.3 entitled "Wallsend Pumping Station Outlet Structures" shows details of the catch basin and gatewell.

Defendants took the position that the words "Culvert & Headwalls" as added

---

Smith, Denham & Gillis, Middlesboro, Ky., for plaintiff.

R. L. Brown, Williamsburg, Ky., for defendants.

HIRAM CHURCH FORD, Chief Judge.

This is a civil action between citizens of different states. The matter in controversy exceeds the sum of $3,000, exclusive of interest and costs.

Plaintiff, The Maiden Company, a corporation organized under the laws of the

in the subcontract beneath the work description "Outlet structures, complete" indicated that it was intended that the portion of work under this heading was to include only the culvert and headwalls. Plaintiff contends that these words were added merely to clarify the fact that the culvert and headwalls were part of the "Outlet structures, complete", the construction of which were included in the defendants' obligation under the subcontract.

The defendants declined to construct the catch basin and gatewell and other work required as part thereof by paragraph 7–02 of section 7 of the specifications entitled "Outlet Structures". Such portions of the outlet structures as were omitted by defendants were completed by the plaintiff.

We find no ambiguity in the subcontract. It seems quite clear that it covered by its terms the construction of the outlet structures, complete, as defined in the specifications and drawings, which included the culvert, headwalls, catch basin and gatewell, and incidental work listed in connection therewith.

By terms of the subcontract all materials necessary for the construction provided for therein were to be supplied by The Maiden Company and the cost of same deducted from the amount due Broyles Brothers on the subcontract. Also, Broyles Brothers' workmen were to be paid directly by The Maiden Company and the cost of such labor, including Workmen's Compensation Insurance and Social Security Taxes deducted from the amount due on the subcontract.

By this action plaintiff, The Maiden Company, seeks to recover the sum of $5,890.86 from the subcontractor Broyles Brothers and the surety Aetna Casualty & Surety Company, which plaintiff alleges to be the balance due it for labor and materials supplied under the terms of the contract including the cost of construction work which defendants were obligated to complete but failed and refused to do. It is established by the proof and by stipulation of the parties that the total earnings of the defendants under the subcontract amounted to the sum of $42,100.23. A stipulation entered into by the parties and filed as a part of the record itemized the materials supplied by plaintiff to defendants and used in the completion of the contract and the cost thereof at the total sum of $15,197.15. The defendants took exception only to nine items of such materials which appear to have been the material used by the plaintiff in the completion of the portion of the work referred to in the record as "Outlet Structures" for the construction of which the defendants claimed they were not obligated. Having found, as above stated, that defendants were in error in that respect, the sole objections made to the itemized list of materials is removed and the defendants are chargeable with the full amount thereof.

The evidence establishes further that in accordance with the provisions of the contract, the plaintiff paid defendants' laborers, including social security and workmen's compensation expenses the total sum of $19,042.20; and, in addition thereto, expended the sum of $3,769.08 for labor in performing the construction work, which defendants wrongfully declined to perform and paid defendants by checks $10,104.75.

Thus the total amount properly chargeable in favor of plaintiff against the defendants is the sum of $48,113.18, leaving a balance due of $6,012.95. It is conceded by the plaintiff, however, that this balance should be reduced by the sum of $45, which represents the ninth exception listed in the stipulation, leaving the sum of $5,967.95 due plaintiff on account of materials furnished and payments made in excess of defendants' earnings.

By counterclaim, the defendants seek damages in the sum of $10,000 alleging "that their entire organization, including their machinery, manpower, was laid off and their machinery out of use for weeks at a time because of the carelessness and neglect on the part of the plaintiff to furnish material according to and in violation of said contract and that the

time required to complete said job was prolonged because of said neglect."

Defendants further assert a claim for credit against the charges made by plaintiff on account of materials bought by defendants and used by them in the performance of the subcontract for which they say they have been given no credit. There is no proof showing that any of the materials bought by defendants and supplied upon the contract at their own expense are contained in any of the charges asserted against the defendants, and obviously defendants are not entitled to such credit.

The evidence is sufficient to establish that suspension of work in whole or in part occurred at various times during the construction period and as a result thereof defendants' machinery and manpower was laid off; and upon some occasions when work was suspended defendants moved away their machinery and organization and engaged in other construction work, but the record contains no proof by which the court can measure the damages sustained on account thereof, if any were sustained, nor is there any proof showing that any of such delay was due to negligence of the prime contractor or was unreasonable. In the absence of such proof the defendants are not entitled to recover anything on account of time lost by work suspensions or other delays.

The proof is insufficient to sustain the burden resting upon the defendants in respect to their claims for extra work and such claims should be denied. None of them are stated in the pleadings as counterclaims.

Although the amount found to be due plaintiff appears to be $5,967.95, since the plaintiff's claim is limited by its pleading to the sum of $5,890.86, and no amendment has been filed, the plaintiff is entitled to recover only the sum of $5,890.86, and its costs herein.

The defendants' counterclaim should be dismissed for lack of proof upon which to base the measure of any damage sustained, or to sustain defendants' claim for credit on account of materials furnished at their own expense.

Counsel for plaintiff will serve and submit for entry judgment in conformity herewith.